[Civ. No. 8406. First Appellate District, Division Two.—November 2, 1932.]

MARIANA AZEVEDO, as Administratrix, etc., Respondent, v. SEBASTAIO AVILA PIMENTEL, Appellant.

Pardini & Scampini and F. B. Cerini for Appellant.

Charles A. Gale, Walter T. Nilson and Myron Harris for Respondent.

KING, J., pro tem.—The action is for the possession of certain premises, consisting of a lot with two houses thereon in Pleasanton, for $1,000 damages for the unlawful holding of the same by defendant, for damages for the value of the

use and occupancy thereof, and for a decree quieting the title of plaintiff to the property.

Defendant denies the ownership of plaintiff; admits the possession by defendant, but claims that his possession is that of an owner of the property, and denies plaintiff's damage. Alleges that on or about November 1, 1922, he entered into an agreement of purchase for the property with Maria Josefa, plaintiff's decedent, for $4,000; that he paid the money to decedent, then and at all times a resident of Portugal, said payment being made in Portugal; that on said date, or thereabouts, decedent executed an instrument purporting to convey to him said property, which until November 24, 1928, he believed to be a valid conveyance. That he remained in Portugal until August 2, 1927, and upon arriving in the United States he immediately entered into possession as owner, made valuable repairs on the property, and has paid taxes thereon; and alleges that by reason of the acts of decedent, and of plaintiff, plaintiff is estopped from claiming or asserting any right, title or interest in the property.

Defendant sets up by way of cross-complaint the same facts as to the payment, the execution of the agreement, and the execution of the document purporting to convey above-mentioned property, which defendant alleges to be "valid under the laws of the Republic of Portugal". Also alleges that he has not commenced any action for the specific performance of the agreement or for the procuring of a deed from decedent, or from the plaintiff, for the reason that decedent executed to cross-complainant "A document valid under the laws of the Republic of Portugal" purporting to convey to "Defendant the said real property"; and that defendant relied thereon and believed up to November 24, 1928, that said instrument conveyed to him a valid and complete title; and that neither decedent nor plaintiff in any way questioned his title up to November 24, 1928. That decedent was at all times a resident of Portugal and never personally present in California.

Defendant asks judgment that he is the owner of the property, and that plaintiff be required as administratrix to execute a deed to him.

Plaintiff answers this cross-complaint denying, for lack of information or belief, the making of any agreement, or

that said contract, if made, was fair or the sum to be paid reasonable, and denies any payment; denies the execution of any document purporting to convey a title; denies defendant's belief in or reliance on the validity of the contract or the purported conveyance; denies that decedent and/or plaintiff did not question defendant's title; alleges that decedent and the plaintiff at all times claimed title; alleges laches and unreasonable delay, and sets up the statute of limitation.

Judgment went for plaintiff, and on denial of a motion for new trial defendant appeals.

Findings were made by the court that all facts alleged in the complaint are true; that Maria Josefa at the time of her death, November 27, 1927, was the owner in fee simple and entitled to the possession of the property; that plaintiff as administratrix is entitled to possession, and the heirs of the decedent are owners. That defendant took possession October 24, 1927, as agent of decedent and immediately thereafter asserted an adverse claim. That since said last-mentioned date he has been in possession and has collected rents, etc. That defendant was, at the commencement of the action and still is in possession; that plaintiff has demanded possession, which was refused. That defendant's possession and claim were and are without right; that he was not at any time and is not now entitled to possession; that he has not and never has had any estate or interest; that defendant never entered into any agreement to purchase the property. That he did not make any payment to decedent for the property. That he did not take possession as owner, but as agent for decedent, and thereafter asserted an interest adverse to decedent. That he did not make any valuable repairs or pay any taxes under any *bona fide* claim or belief that he was the owner, and did not make any repairs of a permanent or beneficial nature; that he has been guilty of laches and unreasonable delay. That plaintiff has been ''damaged by the use and occupancy of said premises and the withholding thereof by the defendant in the sum of $800''.

■ Appellant vigorously attacks nearly all the findings, and characterizes the judgment as ''Harsh, inequitable and unconscionable.''

The only witnesses who testified were Thomas H. Silva, a local banker, who had acted as agent for decedent from 1920 (when she acquired the property from the estate of a deceased son), down to October, 1927, and the defendant himself called by plaintiff under section 2055 of the Code of Civil Procedure, and later defendant's own attorney questioned him.

Silva testified he handled the property from 1920 to October, 1927, with no change in the ownership to his knowledge. That early in September, 1927, defendant came into the bank and "simply announced the fact that he was going to look after his mother-in-law's property and try to sell the property. Perhaps a week or two weeks later he showed me a power of attorney written in the Portuguese language. At that time he took up with me the matter of the sale of some outside lots, which I had agreed with Mrs. Ignacia Pimentel, wife of defendant and daughter of decedent, that I would buy. All my correspondence regarding the property while I was agent was with this same lady, who had originally placed it in my hands for her mother. She lived in the Azores and did all the correspondence for her mother, who could not write. This power of attorney gave him authority, gave him power to act for Maria Josefa. I made my last collection of rent October 20, 1927, and at that time defendant was living in one of the houses. The rental value of the two houses is about $40 a month." On cross-examination he testified that Ignacia Leal, daughter of decedent showed him her power of attorney from decedent in 1920, and she then employed him to act. "I paid the taxes for 1927 and 1928. It was some time after October, 1927, that defendant showed me a deed for the property to himself. He has been in possession ever since."

At this point defendant's attorney stated, "I do not say that this is a legal title, but he has an equitable title." It was then stated by counsel for defendant that the paper mentioned by the witness as a power of attorney was not signed by decedent.

Defendant, called for cross-examination, testified: "I paid the $4,000 to decedent in the house in front of the daughter. This daughter is now my wife, but was not then. I was in this country from 1911 for six years. I took all my money with me to Portugal. I had very little when I first

came to this country. It was more than $2,000, all in gold, which I took to Portugal in 1916. I did not get anything in writing from Maria Josefa to show that I paid this money because she could not write and the daughter went to Fayal to sign the deed. I never saw any of the rents from that property from 1922 to 1927. I never wrote to Mr. Silva that I bought the property before I came here because my mother-in-law made me her attorney in fact to come in here and sell the property and receive the moneys. I presented the papers to Mr. Silva in the same hour I arrived in Pleasanton. I sent back to the Azores a power of attorney for my mother-in-law's signature. I had a power of attorney made because they told me that power of attorney was not valid. I could not say how much rents I have collected because I have been sending the money over to my family. I have spent some on bills, too. I cannot say how much. I did not record the deed and power of attorney.''

On questioning by his own counsel he testified: ''I paid Maria Josefa in American paper money. I brought that document of purchase with me and tried to record it August 16, 1927, but it could not be recorded. I took the deed before the notary public in Fayal, Azores Islands. It was delivered to me by the attorney in fact. I have made repairs on the property, have placed 'For Rent' signs on it, and 'For Sale'. I told plaintiff I had bought the property, and she knew all of this time that I had possession of it.''

The witness was questioned minutely regarding when and how he acquired the money which he paid for the property, and testified that he worked while in this country, took his money to Portugal in gold, and profited largely by ''negotiating'' it into Portuguese money, ran a profitable mill while in Portugal, but was very vague and uncertain in his statements as to his financial transactions.

There were introduced in evidence by plaintiff (1) the power of attorney given by decedent to her daughter, Ignacia Concalves Leal, dated October 31, 1922; (2) the document purporting to be a deed, dated November 3, 1922, and (3) a power of attorney dated April 12, 1926, from Maria Josefa to defendant. None of these papers was signed by Maria Josefa. All were certified by a notary. As to the two powers of attorney the notary certifies ''The constituent

not signing because she does not know how to write". The deed is signed by the said Ignacia Concalves Leal and by the defendant, and by two witnesses. All the documents are written in the Portuguese language, with translations attached. The power of attorney to Ignacia constitutes Ignacia a "General attorney-in-fact, with power of substitution . . . for the special purpose of selling . . . the pieces of land, or a part thereof, that she possesses in the town of Pleasanton". The third paper constitutes defendant her attorney-in-fact and gives him power to sell, all or in parts, "All the lots or property that she may have in the United States".

Evidently the deed not being "An instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing" (Civ. Code, sec. 1091), is not a valid conveyance to the defendant, especially as the attorney-in-fact did not "subscribe the name of his principal to it, and his own name as attorney in fact" (Civ. Code, sec. 1095).

As will be seen above, no testimony was produced controverting defendant's direct evidence that he paid Maria Josefa the sum of $4,000 for the property, but the court, having seen the witness and heard him testify, clearly did not believe his testimony, for it is found that he did not make any payment to decedent.

The defendant testified squarely: "I presented the papers to Mr. Silva in the same hour I arrived in Pleasanton." The witness Silva, however, testified that defendant "simply announced the fact that he was going to look after his mother-in-law's property and try to sell the property", and that it was some time after October, 1927, that defendant showed him a deed for the property to himself. With this direct conflict in the evidence the court found "That defendant took possession of all of said premises, . . . as agent of said Maria Josefa, and immediately thereafter asserted a claim to said premises adverse to the ownership and interest of said Maria Josefa in said premises." The trial court, having heard the evidence, evidently did not believe the defendant.

Appellant's counsel strongly urges that if the documents placed in evidence are not sufficient to constitute a conveyance yet the court should have declared that plaintiff was

a trustee for the bare legal title and should have compelled her to convey to appellant.

It will be seen that the whole case of defendant and cross-complainant rests upon his claim that he paid the $4,000 to decedent for the property. If he did not make the payment, he has no claim. The court which heard the evidence finds explicitly that he did not make it. The appellate courts of California have many times held that findings by the trial courts in such circumstances will not be disturbed. We feel that such should be the holding here.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 2, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1932.